IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| SCHWARTZ MANES RUBY & SLOVIN, L.P.A. | : : | Case No. 1:09cv790 |
| | : | Chief Judge Susan J. Dlott |
| Plaintiff, | : | |
| | : | ORDER GRANTING DEFENDANTS' |
| v. | : | MOTION FOR SUMMARY |
| | : | JUDGMENT AND DEFENDANTS' |
| MONITOR LIABILITY MANAGERS, | : | MOTION TO STRIKE THE EXPERT |
| LLC and CAROLINA CASUALTY | : | AFFIDAVIT OF THOMAS |
| INSURANCE COMPANY, | : | CHATHAM |
| | : | |
| Defendants. | : | |

This matter is before the Court on the Motion for Summary Judgment of Defendants

Monitor Liability Managers, LLC ("Monitor") and Carolina Casualty Insurance Company

("Carolina") (collectively, "Defendants") (doc. 18) and Defendants' Motion to Strike the Expert

Affidavit of Thomas Chatman (doc. 25).  For the following reasons, both motions are

GRANTED.

I.      **BACKGROUND**[1]

In April of 2002, Plaintiff Schwartz Manes Ruby & Slovin, L.P.A. ("SMRS") was

retained to represent Barbara Kissel in connection with a property dispute filed by her

stepmother, Clara Kissel; that case was captioned *Kissel v. Kissel*, Kenton County Circuit Court,

02 CI 0792 (the "Kissel matter").  SMRS associate Harry Sudman originated the Kissel matter.

Because Sudman was not licensed to practice law in Kentucky, he assigned the Kissel matter to

---

[1]  Except as otherwise indicated, background facts are drawn from Defendants' proposed
undisputed facts (doc. 20) to the extent they are admitted in SMRS's response thereto (doc. 31).

another SMRS associate, David Snyder. (Levin Aff. ¶ 18.)[2] Snyder left SMRS in 2003. (*Id*. ¶ 15.) Sudman left SMRS in October of 2005. (*Id*.) From April 5, 2002 through September 15, 2004, SMRS billed 11.96 hours to the Kissel matter. (Doc. 26-1, Ex. L.) And after September 15, 2004, no SMRS attorney performed work on the Kissel matter.

In 2005, SMRS failed to appear at the scheduled trial in the Kissel matter. On March 14, 2006, the Kentucky court entered judgment in favor of Clara Kissel and against Barbara Kissel. On March 17, 2008, SMRS returned the remainder of Barbara Kissel's retainer. Upon receiving the check from SMRS, Barbara Kissel retained new counsel, Paul Vesper. On May 29, 2008, Vesper requested a copy of Kissel's file from SMRS. On June 15, 2008, Vesper informed SMRS that the Kissel file contained a notice notifying SMRS of the 2005 trial date. He further informed SMRS that the Kentucky court had entered judgment in Clara Kissel's favor. Vesper then asked for an explanation as to why SMRS failed to represent Barbara Kissel in the 2005 trial.

SMRS received Vesper's letter on June 18, 2008. Based on this letter, SMRS attorney Debbe Levin undertook an internal investigation into the firm's representation of Barbara Kissel. (Levin Aff. ¶ 11.) Levin obtained a copy of the docket for the Kissel matter from the Kenton County Circuit Court. (*Id*. ¶ 12.) Levin was unable to determine whether any attorney at SMRS received notice from the court regarding the 2005 trial date. (*Id*. ¶ 17.) Levin's investigation revealed the following: Snyder returned the Kissel file to Sudman when Snyder left SMRS in 2003; Sudman asked Cincinnati attorney Geoffrey Damon to take the Kissel matter when

---

[2] The Affidavit of Debbe Levin is attached as Exhibit A to Plaintiff's Opposition Memorandum, doc. 21-1 at 2-7.

Sudman left SMRS in October of 2005 (*id.* ¶ 20); and Damon had no recollection of talking with Sudman about the Kissel case and denied that he had agreed to take over the file. (*id.*¶ 21). On July 10, 2008, SMRS notified its insurance agent, Fred Wittenbaum of SP Agency, that Barbara Kissel might assert a legal malpractice claim against it.

On July 24, 2008, Carolina issued Lawyers Professional Liability Policy Number 9849712 to SMRS for the policy period of June 29, 2008 to June 29, 2009 (the "Carolina Policy").[3] Although SMRS did not receive a written copy of the Carolina Policy until on or about August 6, 2008 (Levin Aff. ¶ 25), SMRS was informed in documents dated June 12, 2008 and June 24, 2008 that a "copy of the Proposal Forms and a specimen copy of the Policy Form" could be downloaded from Defendants' website (doc. 26-1 at 17-30).

The relevant portion of the Carolina Policy reads as follows:

> I.     Insuring Agreement
>
> This policy shall pay on behalf of the Insured all Damages and Claims Expenses that the Insured shall become legally obligated to pay, arising from any Claim first made against an Insured during the Policy Period and reported to the Insurer in writing during the Policy Period or within 60 days thereafter, for any Wrongful Act, provided that prior to the inception date of the first Lawyer's Professional Liability Insurance Policy issued by the Insurer to the Named Insured, which has been continuously renewed and maintained in effect to the inception of this Policy Period, the Insured did not know, or could not reasonably foresee that such a Wrongful Act might reasonably be expected to be the basis of a Claim.

(Doc. 3-3 at 5.) The Carolina Policy defines "Claim" as "a written demand for monetary or non-monetary relief, including, but not limited to, a civil, criminal, administrative or arbitration

---

[3] The Carolina Policy is attached as Exhibit C to Defendants' Answer, Doc. 3-3 at 4-11.

proceeding. . . .  A Claim shall be deemed to have been first made at the time notice of the Claim is first received by any Insured."  (Doc. 3-3 at 6.)  The Carolina Policy defines "Wrongful Act" as "any actual or alleged act, omission, or Personal Injury arising out of Professional Services rendered by an Insured or by any person for whose acts or omissions the Insured is legally responsible." (Doc. 3-3 at 7.)

On January 18, 2009, Barbara Kissel filed suit against SMRS, Sudman, and Snyder in Kenton County Circuit Court; that case was captioned *Kissel v. Schwartz Maes & Ruby Co., L.P.A., et al*, Kenton County Circuit Court, 09 CI 165.  In that case, Barbara Kissel claims that SMRS committed legal malpractice by, *inter alia*, failing to appear at her 2005 trial and failing to disclose the resulting adverse judgment.  Defendants initially undertook defense of the malpractice action under a reservation of rights, and later withdrew representation and denied coverage on SMRS's claim.  (Doc. 2-1 at 17.)

On September 30, 2009, SMRS filed a complaint against Defendants in state court, seeking a declaratory judgment that Defendants are obligated to provide SMRS with a defense and coverage in the malpractice action.  (Doc. 1-1.)  Defendants timely removed the suit to this Court on October 29, 2009.  (Doc. 1.)  On March 7, 2011, Defendants moved for summary judgment on SMRS's claims.  (Doc. 18.)  Defendants argue that summary judgment should be granted because the undisputed facts show that prior to the effective date of the Carolina Policy, SMRS could have reasonably foreseen that Barbara Kissel might make a malpractice claim against the firm.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  On a motion for summary judgment, the movant has the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).  The moving party may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).  The nonmoving party "must set forth specific facts showing there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The task of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Liberty Lobby*, 477 U.S. at 249.  A genuine issue for trial exists when the evidence is not "so one-sided that one party must prevail as a matter of law."  *Id.* at 252.

## III.   ANALYSIS

Defendants' Motion for Summary judgment is GRANTED because (A) the Carolina Policy's foreseeable claim exception is binding on SMRS; (B) the Carolina Policy unambiguously excludes any claim arising out of a wrongful act occurring prior to the effective date of the policy if the insured knew or could have reasonably foreseen that such act might be

the basis of a claim; and (C) the undisputed facts show that prior to the effective date of the Carolina Policy, SMRS knew or could have reasonably foreseen that SMRS's handling of the Kissel matter might be the basis of a claim.  Defendants' Motion to Strike the Expert Affidavit of Thomas Chatman is GRANTED because Chatham's interpretation of the Carolina Policy is not an appropriate topic for expert testimony.

> **A.** **SMRS is Bound by the Carolina Policy's Foreseeable Claim Exception.**

In response to Defendants' Motion for Summary Judgment, SMRS claims that it is not bound by the foreseeable claim exception found in the Carolina Policy's Insuring Agreement because it did not see this language until after the insurance coverage commenced.  This argument is unavailing.  Although SMRS did not receive a written copy of the Carolina Policy until on or about August 6, 2008, SMRS was informed in documents dated June 12, 2008 and June 24, 2008 that a "copy of the Proposal Forms and a specimen copy of the Policy Form" could be downloaded from the Defendants' website.  The policy forms and the specimen copy remained relatively unchanged and freely available for review.  Further, although SMRS did not receive its written policy until August 6, 2008, nothing in the record indicates that SMRS took issue with the policy's language until more than a year later when it filed the pending Complaint against Defendants.

Second, SMRS was familiar with this type of claims-made policy and the foreseeable claim exception contained therein.  For five years prior to its purchase of the Carolina Policy, SMRS had a professional liability insurance policy through Zurich.  The Zurich Policy, like most professional liability policies, contained foreseeable claim exception language similar to that

contained in the Carolina Policy.[4]  For these reasons, SMRS is bound by the foreseeable claim
exclusion contained in the Carolina Policy.

> **B.      The Carolina Policy is Not Ambiguous.**

SMRS next argues that it is not bound by the foreseeable claim exception because the
Carolina Policy is ambiguous and susceptible to multiple interpretations.  Specifically, SMRS
argues that the Carolina Policy can be read to provide coverage for claims made in the first
policy year even if the insured could have foreseen the claim prior to the policy's inception date.
(Doc. 21 at 13.)

As a preliminary matter, this case is before the Court on diversity jurisdiction, and
consequently, Ohio law applies.  *See Erie R. Co. v. Tompkins*, 304 U.S. 69, 78 (1939); *Westfield
Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003).  When interpreting an insurance
policy, words and phrases "must be given their natural and commonly accepted meaning."  *U.S.
Fed. & Guar. Co. v. Lightning Rod Mut. Ins. Co.*, 80 Ohio St. 3d 584, 687 N.E.2d 717, 719
(Ohio 1997); *see also Watkins v. Brown*, 97 Ohio App. 3d 160, 646 N.E.2d 485, 487 (Ohio Ct.
App. 1994) ("[c]ontract terms are to be given their 'natural and usual' meaning if they are not
defined in the policy, unless it is clear from the policy that the parties intended to use some
specialized or technical definition").

---

[4]  The language in the Zurich Policy "Insuring Agreement" reads as follows: "It is a
condition precedent to coverage under this policy that the act or omission occurred: 1. during the
Policy Period; or 2. prior to the Policy Period, provided that all of the following four conditions
are met: a) the Insured did not notify any prior insurer of such act or omission or Related Act or
Omission; and b) prior to the inception date of the first policy issued by the Company if
continuously renewed, no Insured had any basis (1) to believe that any Insured had breached a
professional duty; or (2) to foresee that any such act or omission or Related Act or Omission
might reasonably be expected to be the basis of a Claim against any insured."  (Zurich Policy,
doc. 26-1, at (I)(A)).

Generally, provisions susceptible to more than one interpretation "will be construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.,* 35 Ohio St. 3d 208, 519 N.E.2d 1380, 1380-81 (6th Cir. 1988). However, this rule of construction is inapplicable where policy language is "unambiguous or where ambiguity can be resolved through ordinary rules of interpretation." *Scott v. Am. Nat'l Fire Ins. Co., Inc.,* 216 F. Supp. 2d 689, 693 (N.D. Ohio 2002). Furthermore, "an ambiguity does not arise merely because the parties disagree regarding the interpretation of specific provisions." *Westport Ins. Corp. v. Coffman*, No. C2-05-1152, 2009 WL 243096, *4 (S.D. Ohio Jan. 29, 2009). An interpretation that renders any provision of the policy meaningless or is inconsistent with the intent of the policy is not reasonable and does not constitute an "ambiguity" requiring construction. *Hedmond v. Admiral Insur. Co.*, No. 02AP-910, 2003 WL 21791589, *6 (Ohio App. Aug. 5, 2003). Nor can the court interpret the policy in a manner which would result in an extension of coverage. *United States v. A.C. Strip,* 868 F.2d 181, 185 (6th Cir. 1989).

Here, SMRS argues that the ambiguity exists in the italicized phrase:

> This policy shall pay on behalf of the Insured all Damages and Claims Expenses that the Insured shall become legally obligated to pay, arising from any Claim first made against an Insured during the Policy Period and reported to the Insurer in writing during the Policy Period or within 60 days thereafter, for any Wrongful Act, provided that prior to the inception date of the first Lawyer's Professional Liability Insurance Policy issued by the Insurer to the Named Insured, *which has been continuously renewed and maintained in effect to the inception of this Policy Period*, the Insured did not know, or could not reasonably foresee that such a Wrongful Act might reasonably be expected to be the basis of a Claim.

(Doc. 3-3 at 5 (emphasis added.)) SMRS argues that this phrase can be interpreted to mean that Carolina is "relieved of its obligation to cover and defend against pre-coverage claims made against an

insured only in cases where there had been a history of coverage through successive Carolina liability polices written on behalf of the insured with seamless renewals contract after contract." (Doc. 21 at 13-14.)  SMRS also argues that the policy can be read to provide coverage for claims made in the first policy year even if the insured could have foreseen the claim prior to the policy's inception date.

This interpretation is inconsistent with both the plain language and the intent of the policy.  First, the plain language of the Carolina Policy provides that the foreseeable claim exception applies if the insured's notice of a wrongful act predates inception of the first policy issued by Carolina.  Second, the intent of the policy language is to exclude from coverage wrongful acts of which the insured had notice and which the insured could have reasonably foreseen prior to the inception date of the policy.  SMRS's suggested reading would render the exclusion meaningless for any claim made during the first year of the policy.  Such a construction is impermissible.  For these reasons, the Court finds that the Carolina Policy unambiguously excludes any claim arising out of a wrongful act occurring prior to the effective date of the policy if the insured knew or could have reasonably foreseen that such act might be the basis of a claim.

**C.**     **The Carolina Policy Excludes from Coverage Kissel's Malpractice Claim.**

Defendants contend that prior to the inception date of the Carolina Policy**,** SMRS had knowledge of circumstances which could reasonably be expected to give rise to a claim against it and, consequently, there is no duty to defend or indemnify SMRS in the underlying malpractice suit.  SMRS contends that the reasonableness of its beliefs is a factual issue that cannot be resolved on summary judgment.

As discussed in the previous section, the Carolina Policy excludes from coverage any claim arising out of a wrongful act that occurred prior to the effective date of the policy if SMRS knew or could have reasonably foreseen that such act might be the basis of a claim. The policy period began on June 29, 2008. The undisputed facts show that prior to the policy period, SMRS knew that (1) SMRS was counsel of record for Barbara Kissel at all relevant times during the Kissel matter, (2) SMRS did not appear at Barbara Kissel's 2005 trial, (3) judgment was entered against Barbara Kissel on March 14, 2006, and (4) Barbara Kissel's new counsel believed SMRS was responsible for the adverse judgment. Given these circumstances, the Court finds that SMRS either knew or could have reasonably foreseen that SMRS's handling of the Kissel matter might be the basis of a malpractice claim. The undisputed facts render any failure to appreciate the potential claim entirely unreasonable. Because SMRS either knew or could have reasonably foreseen that SMRS's handling of the Kissel matter might be the basis of a malpractice claim, the Carolina Policy excludes from coverage the underlying malpractice suit.

>    **D.    The Chatham Report is Not Admissible.**

Defendants also move to strike the affidavit of SMRS's expert, Thomas Chatham. (Doc. 25.) Defendants contend that Mr. Chatham's opinion regarding the interpretation and application of the Carolina Policy is not an appropriate topic for expert testimony.

"The interpretation of an insurance contract involves a question of law to be decided by a judge." *Leber v. Smith*, 70 Ohio St. 3d 548, 553, 639 N.E.2d 1159 (1994). Where an insurance contract is unambiguous, "it is error to allow expert testimony regarding the meaning of the contract." *The Way Int'l Inc. v. Executive Risk Indem., Inc.*, No. 3:07cv294, 2009 WL 3157402, *4-5 (S.D. Ohio Jan. 27, 2009). Given this Court's conclusion that the Carolina Policy is

unambiguous, it is clear that evidence of a contrary opinion is inadmissible.  *See id; Thomas Noe, Inc. v. Homestead Ins. Co.*, 173 F.3d 581, 583 (6th Cir. 1999) (holding that, where an insurance policy exclusion was unambiguous, evidence of an expert witness's conclusion to the contrary is not admissible).

## IV.    CONCLUSION

For the foregoing reasons, both Defendants' Motion for Summary Judgment (doc. 18) and Defendants' Motion to Strike the Expert Affidavit of Thomas Chatham (doc. 25) are GRANTED.

IT IS SO ORDERED.


S/Susan J. Dlott
Chief Judge Susan J. Dlott
United States District Court

11